## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

**JOSEPH B. HOLLAND, JR.**; and
**JOE HOLLAND CHEVROLET, INC**.,
a West Virginia Corporation,

Plaintiffs,

v.

Civil Action No. <u>2:13-cv-15487</u>

**THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**; **KATHLEEN SEBELIUS**, in her official capacity as Secretary of the United States Department of Health and Human Services; **THE UNITED STATES DEPARTMENT OF LABOR**; **SETH D. HARRIS**, in his official capacity as Acting Secretary of the United States Department of Labor; **THE UNITED STATES DEPARTMENT OF THE TREASURY**; and **JACOB J. LEW**, in his official capacity as Secretary of the United States Department of the Treasury,

Defendants.

## VERIFIED COMPLAINT

**COME NOW** the Plaintiffs, Joseph B. Holland, Jr. ("Mr. Holland") and Joe Holland

Chevrolet, Inc. ("Holland Chevrolet"), by and through their undersigned counsel, and state their

Complaint against the Defendants as set forth below.

## INTRODUCTION

This is an action seeking declaratory and injunctive relief to protect the Plaintiffs from

certain unlawful and unconstitutional requirements of the Patient Protection and Affordable Care

Act of 2010 (Pub. L. 111-148, 124 Stat. 119 (2010)), the Health Care and Education

Reconciliation Act (Pub. L. 111-152, 124 Stat. 1029 (2010)), and certain provisions of the

{R0811635.1}

implementing regulations found in Title 45 of the Code of Federal Regulations (collectively "the ACA") that force Holland Chevrolet to include in their group health insurance plan coverage for drugs that induce abortion ("abortifacient drugs") and contraceptive counseling, which includes discussion of the use and availability of abortifacient drugs (referred to hereafter as "abortion-related counseling") (collectively "the Government Mandate"). This Mandate deprives Plaintiffs of their fundamental right to practice their sincere and deeply held religious beliefs as protected by the First Amendment of the United States Constitution and the Religious Freedom Restoration Act, 42 U.S.C §§ 2000bb *et seq.*("RFRA") and violates their First Amendment rights to freedom of speech and freedom of association.

## IDENTIFICATION OF PARTIES

1.      Mr. Holland is a United States citizen and a resident of Kanawha County, West Virginia.

2.      Holland Chevrolet is a West Virginia corporation with its principal place of business located in South Charleston, West Virginia.  It is a closely-held corporation engaged primarily in the business of selling and servicing motor vehicles.

3.      Holland Chevrolet is a C-Corporation.  Mr. Holland owns 91% of Holland Chevrolet's stock and the remaining stock is held in trust by the Joseph B. Holland, Sr. Trust, of which Mr. Holland is Trustee.

4.      Holland Chevrolet provides group medical insurance coverage to approximately 150 full-time employees.

5.      Mr. Holland is president of Holland Chevrolet and chairman of its board of directors.   Accordingly, Mr. Holland would be responsible for implementing Holland Chevrolet's compliance with the Government Mandate.

2

6.      The Defendants are Executive Branch agencies of the United States government and appointed officials of those agencies responsible for implementing and enforcing the Government Mandate.

7.      Kathleen Sebelius is the Secretary of the United States Department of Health and Human Services ("HHS") and is sued in her official capacity only.

8.      Seth D. Harris is the Acting Secretary of the United States Department of Labor ("DOL") and is sued in his official capacity only.

9.      Jacob J. Lew is the Secretary of the Department of the Treasury ("the Treasury") and is sued in his official capacity only.

10.      HHS, DOL, and the Treasury each have responsibilities for promulgating regulations implementing the ACA and for administering and enforcing its provisions, including the Government Mandate.

## JURISDICTION AND VENUE

11.      This action arises under the Constitution and laws of the United States.  The United States District Court for the Southern District of West Virginia has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1346 and 1361, jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 & 2202, 42 U.S.C. § 2000bb-1, and Fed. R. Civ. P. 65, and to award reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C.  § 2412, and 42 U.S.C. § 1988.

12.      Venue is in the United States District Court for the Southern District of West Virginia pursuant to 28 U.S.C. §1391. A substantial part of the events or omissions giving rise to the claim occurred in this district and the Plaintiffs are located in this district.

## NATURE OF THE CASE

13.     This is an action seeking declaratory and injunctive relief from the Defendants'

violations of RFRA and the First Amendment to the United States Constitution (collectively,

"the Applicable Laws").

14.     The Defendants have violated or will violate the Applicable Laws by

implementing the ACA in ways that coerce the Plaintiffs to abandon or act in derogation of their

sincere and most deeply held religious beliefs.

15.     Mr. Holland is a believing and practicing born-again Christian. He is resolved, as

a matter of religious belief, to conduct all aspects of his life, including the management of

Holland Chevrolet, in accordance with God's Word.   One of Mr. Holland's sincerely held

religious beliefs is that all innocent human life is sacred to its Creator and that it is profoundly

immoral to procure, facilitate, fund, or endorse any form of abortion.

16.     In Mr. Holland's ownership and management of Holland Chevrolet, he regards it

as his religious duty to operate the business in conformity with his religious beliefs.  Holland

Chevrolet, as a cognizable legal person, embraces and conducts itself in accordance with the

same religious principles that animate its president, chairman of the board, and principal

stockholder.  In Mr. Holland's view, his right to free exercise of religion should not be limited by

the form in which he elects to do business.

17.     The Plaintiffs believe that they would be complicit in violation of the Sixth

Commandment of the Bible ("Thou Shalt Not Kill") if they provide the insurance coverage

required by the Government Mandate ("the Objectionable Coverage").  Heretofore, the Plaintiffs

have not included the Objectionable Coverage in the health insurance coverage that is provided

to the employees of Holland Chevrolet.  The current term of that health insurance coverage runs

4

through June 30, 2013; the new plan year for the insurance will commence July 1, 2013 and, absent relief from this Court, the plan will then be subject to the Government Mandate.

18.     The Defendants have full knowledge that many individuals and organizations have the same or similar strongly held beliefs as the Plaintiffs.  Nonetheless, the Defendants have issued regulations imposing the Government Mandate on such citizens and organizations and requiring them to provide the Objectionable Coverage.

19.     In issuing such regulations, the Defendants have knowingly violated the rights of the Plaintiffs and many other individuals and organizations to adhere to their religious convictions and to act in accordance with them.

20.     The Government Mandate unlawfully and unconstitutionally coerces the Plaintiffs to violate their sincerely held religious beliefs under the threat of severe penalties.

21.     The Government Mandate also forces the Plaintiffs to endorse speech that contravenes their own religious beliefs and values that they strive to promote in their business.

22.     The Defendants have granted many exemptions from requirements of the ACA to various entities, including large corporations and labor unions and various entities with "grandfathered" employer group health plans. The Defendants have also granted exemptions to certain religious entities, but have failed to exempt many other religious entities and religiously observant individuals and entities. The Defendants' exemption of some religious entities, and entities without any distinctive religious beliefs, and failure to accommodate the religious beliefs of individuals and entities such as the Plaintiffs, is highly selective and discriminatory.

23.     The Defendants' actions violate the Plaintiffs' rights to exercise freely their religion as protected by RFRA and the First Amendment to the United States Constitution.

24.     The Defendants' actions violate the Plaintiffs' rights to freedom of speech and freedom of association, as secured by the First Amendment to the United States Constitution.

25.     The Plaintiffs are imminently faced with irreparable harm due to the Government Mandate, which requires them to provide the Objectionable Coverage for the group medical insurance plan year beginning July 1, 2013. The Plaintiffs must now coordinate and arrange for the details of that plan.  Plaintiffs therefore will suffer irreparable harm, unless the Court grants declaratory and injunctive relief to prevent the Defendants' deliberate infringement of their right to enter into a contract of insurance which does not include the Objectionable Coverage.

## FACTUAL ALLEGATIONS

### I.     The Plaintiffs' Religious Beliefs and Actions.

26.     Mr. Holland experienced a religious conversion in 1996 and became a believing and practicing born-again Christian.

27.     In addition to weekly attendance at Maranatha Fellowship Church, Mr. Holland participates in many religious activities as part of his day-to-day life, including the following: he attends a weekly men's group Bible study, which was started in 1996; he supports youth ministries such as the Silver Ring Ministry, which promotes pre-marital sexual abstinence; he participates in Life Chain, a pro-life religious ministry; and he delivers religious readings on Christian radio.

28.     The Plaintiffs believe that the Bible is the inspired, infallible, and authoritative Word of God. The Plaintiffs believe that the Bible reveals the principles by which God expects human beings to conduct themselves in all aspects of their lives, including their jobs and business dealings.

29.     The Plaintiffs believe that Holland Chevrolet should serve as a form of religious ministry and witness to the truth of God's Word.  In observation of the commandment to "Remember the Sabbath day and keep it holy," Holland Chevrolet is closed on Sundays. Holland Chevrolet's website emphasizes as part of the corporation's mission statement the duty

6

"to glorify and honor God by being faithful stewards for all that is entrusted to us."  Holland Chevrolet's signage and other business imagery feature in their design the *ichthus* (the ancient symbol of the Christian faith).  Holland Chevrolet includes among the beneficiaries of its corporate giving various Christian causes such as the Fellowship of Christian Athletes.  Holland Chevrolet employs a chaplain.

30.     Based upon the teachings of the Bible generally, and the Sixth Commandment in particular, the Plaintiffs believe that God abhors and condemns the intentional destruction of innocent human life.

31.     The Plaintiffs believe that God commands respect for the sanctity of all innocent human life, including the lives of the unborn.

32.     The Plaintiffs believe that, according to God's Word, human life begins at conception and that it must be treated with dignity, respect, and protection from the moment of conception onward.

33.     The Plaintiffs believe the category of FDA approved contraceptive methods and procedures in the Government Mandate include abortifacient drugs that cause and/or potentially cause the destruction of human embryos.

34.     The Plaintiffs believe that it would violate the Sixth Commandment for them to engage in any manner in the facilitation or endorsement of abortion.  Consequently, it would be sinful and contrary to their religious principles to provide the Objectionable Coverage to the employees of Holland Chevrolet. The Plaintiffs believe that running Holland Chevrolet in accordance with the teachings of the Bible is a ministry to its employees, its customers, and the community of which it is a part.  They believe that this ministry would be undermined by compliance with the Government Mandate and that providing the Objectionable Coverage would violate God's Word and would contravene the message of their ministry.

**Holland Chevrolet's Health Insurance Plan**

35.     Consistent with their religious beliefs and duties as faithful stewards, the Plaintiffs have provided and wish to continue to provide a generous health care plan ("the Plan") to the employees of Holland Chevrolet.

36.     Since Holland Chevrolet employs approximately 150 full-time employers, it is subject to the Government Mandate.

37.     Consistent with the Plaintiffs' religious beliefs, the Plan has never included the Objectionable Coverage.

38.     In implementing the Plan for a new plan year beginning July 1, 2013, the Plaintiffs must either comply with the Government Mandate and provide the Objectionable Coverage in violation of their religious convictions or face the imposition of severe penalties for failure to do so.

39.     In order to avoid both of those unacceptable alternatives, the Plaintiffs apply to the Court for vindication of their right to offer the employees of Holland Chevrolet a generous Plan that does not violate the Plaintiffs' religious principles.

**The ACA and the Government Mandate**

40.     In March 2010, the Patient Protection and Affordable Care Act was enacted. Shortly thereafter it was amended by the Health Care and Education Reconciliation Act.

41.     Under the ACA, employers with over 50 full-time employees are required to provide a certain minimum level of health insurance to their employees.

42.     Nearly all such plans must include the Objectionable Coverage as part of the "preventive services" which must be offered with no cost-sharing by the employee. Patient Protection and Affordable Care Act, Pub. L. No. 111-148, §2713, 124 Stat. 119-1025 (2010).

43.     The ACA specifically requires that health plans "provide coverage for and shall not impose any cost sharing requirements for . . . with respect to women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration" and directs the Secretary of the Department of Health and Human Services to determine what would constitute preventive care under the ACA mandates. *Id*. at §2713(a)(4).

44.     On July 19, 2010, HHS, along with the Treasury and DOL, published an interim final rule under the ACA. The interim final rule required providers of group health insurance to provide certain preventive care as specified in guidelines to be published by the Health Resources and Services Administration ("HRSA") at a later date. 75 Fed. Reg. 41759 (2010)

45.     On August 1, 2011, HHS, along with the Treasury and DOL, promulgated an interim final rule that includes the Government Mandate, which requires that all "group health plan[s] and . . . health insurance issuer[s] offering group or individual health insurance coverage" provide all FDA-approved contraceptive methods and procedures. 76 Fed. Reg. 46621 (published Aug. 3, 2011); 45 C.F.R. §147.130.

46.     On February 10, 2012, HHS promulgated a final rule ("the Final Rule"), which included the Government Mandate. *See* 45 CFR §147.130 (a)(1)(iv), as confirmed at 77 Fed. Register 8725 (Feb. 15, 2012), adopting and quoting HRSA Guidelines, (http://www.hrsa.gov/womensguidelines, last visited June 7, 2013).

47.     The category of "Food and Drug Administration ("FDA") approved contraceptive methods and procedures" in the Government Mandate includes several abortifacient drugs that may cause the demise of an already-conceived but not-yet implanted human embryo, such as "emergency contraception" or "Plan B" drugs (the so-called "morning after pill"). HRSA Guidelines, (http://www.hrsa.gov/womensguidelines, last visited June 7, 2013).

48.     The FDA approved in this same category a drug called "*ella*" (the so-called "week after pill"), which can function to kill embryos even after they have implanted in the uterus, by a mechanism similar to the abortion drug RU-486.

49.     The manufacturers of some such drugs in the category of "FDA-approved contraceptive methods and procedures" indicate that they can function to cause the demise of an early human embryo.

50.     The Government Mandate also requires group health care plans to pay for the provision (to all female beneficiaries who are capable of bearing children) of counseling, education, and other information concerning contraception (including abortifacient drugs and abortion-related counseling).

51.     The Government Mandate applies to the first health insurance plan year beginning after August 1, 2012.

52.     Absent relief from this Court, the Plaintiffs will be subject to the Government Mandate's requirement to provide the Objectionable Coverage starting in their July 1, 2013 Plan.

53.     The Government Mandate makes only an arbitrary, selective, and discriminatory allowance for certain aspects of the religious freedom of certain entities and individuals, and no allowance at all for the religious freedom of the Plaintiffs, who object to providing the Objectionable Coverage.

54.     The ACA imposes severe penalties if the Plaintiffs continue to offer their Plan without inclusion of the Objectionable Coverage.

55.     The exact magnitude of these penalties may vary according to the complex provisions of the ACA, but the basic monetary penalty is approximately $100 per day, per employee, with minimum amounts applying under certain circumstances.

56.     If the Plaintiffs do not comply with the Government Mandate they also trigger a range of enforcement mechanisms that exist under ERISA, including civil actions by the Secretary of Labor or by plan participants and beneficiaries, which could entail additional penalties.

57.     The Final Rule 45 C.F.R. § 147.130(a)(1)(iv)(B)(2010); 76 Fed. Reg. 46626 (Aug. 3, 2011) offers the possibility of a narrow exemption to certain religious employers, but only if they meet all of the following requirements:

    a)  "The inculcation of religious values is the purpose of the organization";

    b)  "The organization primarily employs persons who share the religious tenets of the organization";

    c)  "The organization serves primarily persons who share the religious tenets of the organization"; and

    d)  The organization is a church, an integrated auxiliary of a church, a convention or association of churches, or is an exclusively religious activity of a religious order, under Internal Revenue Code 6033(a)(1) and (a)(3)(A).

58.     Due to the narrowness of the exemption, it is unavailable to the Plaintiffs.  The Final Rule imposes no constraint on the government's discretion to grant exemptions to some, all, or none of the organizations meeting the definition of "religious employers."

59.     The Final Rule fails to protect the statutory and constitutional religious freedom rights of employers such as the Plaintiffs even though those rights were repeatedly raised in the public comments submitted before the February 10, 2012 promulgation of the Final Rule.

60.     The Government Mandate requires the Plaintiffs to provide the Objectionable Coverage in violation of their religious beliefs, in a manner that is contrary to law.  The Government Mandate coerces the Plaintiffs to abandon or act in derogation of their sincerely held religious beliefs.

61.     The Government Mandate exposes the Plaintiffs to severe penalties for refusal to abandon or act in derogation of their religious beliefs.

62.     Any alleged interest the Defendants have in insisting on making the Objectionable Coverage available to employees could be advanced through other, more narrowly tailored measures that do not burden the Plaintiffs' exercise of their right to religious freedom.

63.     Without injunctive and declaratory relief as requested herein, including preliminary injunctive relief issued before July 1, 2013 the Plaintiffs will suffer irreparable harm.

64.     The Plaintiffs have no adequate remedy at law.

## COUNT I

### Violation of the Religious Freedom Restoration Act
### 42 U.S.C. § 2000bb

65.     The Plaintiffs restate all allegations set forth in the preceding paragraphs of this Complaint.

66.     The Plaintiffs' sincerely held religious beliefs do not allow them to provide the Objectionable Coverage in the Plan.

67.     The Plaintiffs engage in the exercise of religion within the meaning of RFRA.

68.     The Government Mandate imposes substantial burdens on the Plaintiffs' exercise of religion and coerces them to violate their sincerely held religious beliefs.

69.     The Government Mandate exposes the Plaintiffs to severe penalties for their religious exercise, including penalizing them for providing a Plan that does not include the Objectionable Coverage.

70.     The Government Mandate chills and deters the Plaintiffs' religious exercise within the meaning of RFRA.

71.     The Government Mandate furthers no compelling governmental interest and is not narrowly tailored to further any such interest.

72.     The Government Mandate is not the least restrictive means of furthering the Defendants' interests.

73.     The Government Mandate violates RFRA.

## COUNT II

### Violation of the Free Exercise Clause of the First Amendment to the United States Constitution

74.     The Plaintiffs restate all allegations set forth in the preceding paragraphs of this Complaint.

75.     The Plaintiffs' sincerely held religious beliefs prohibit them from providing the Objectionable Coverage as part of the Plan.

76.     The Plaintiffs engage in the exercise of religion within the meaning of the Free Exercise Clause of the First Amendment.

77.     The Government Mandate imposes substantial burdens on the Plaintiffs' religious exercise and coerces them to abandon or act in derogation of their sincerely held religious beliefs.

78.     The Government Mandate exposes the Plaintiffs to severe penalties for their religious exercise.

79.     The Government Mandate chills and deters the Plaintiffs' religious exercise within the meaning of the Free Exercise Clause.

80.     The Final Rule is not neutral and is not generally applicable.

81.     The Defendants have created categorical exemptions and individualized exemptions to the Final Rule.

13

82.     The Government Mandate furthers no compelling governmental interest and is not narrowly tailored to further any such interest.

83.     The Government Mandate is not the least restrictive means of furthering the Defendants' interest.

84.     The Government Mandate violates Plaintiffs' rights secured to them by the Free Exercise Clause of the First Amendment to the United States Constitution.

## COUNT III

### Violation of the Free Speech Clause of the First Amendment to the United States Constitution

85.     The Plaintiffs restate all allegations set forth in the preceding paragraphs of this Complaint.

86.     The Plaintiffs wish to exercise their free speech rights to express a consistent religious-based pro-life message to their employees, their business associates and contacts, and the community in which they do business.

87.     The Government Mandate unconstitutionally burdens the Plaintiffs' rights to speak or not to speak in accordance with their own religious beliefs and to advance the truth as they see it.

88.     The Government Mandate violates the Plaintiffs' First Amendment free speech rights by requiring them to provide the Objectionable Coverage, thus coercing and enlisting them into affirmatively communicating the Government's message in contradiction of their own beliefs. The Government Mandate forces the Plaintiffs to support the Government's viewpoint about the morality of abortion-related activities.

89.     The Government Mandate imposes a requirement on the Plaintiffs to support conduct that substantially burdens and undermines the Plaintiffs' ability to express and advocate effectively their own contrary views.

90.     The Defendants are requiring the Plaintiffs to convey one message when they comply with the Government Mandate, while the Plaintiffs are conveying another when they speak out against abortion, to the detriment of the credibility of their own speech. Such fractured messaging would make the Plaintiffs appear inconsistent, equivocal, or hypocritical and would impair the Plaintiffs' message.

91.     The Government Mandate's compelled speech requirement furthers no compelling governmental interest and is not narrowly tailored to further any such interest.

92.     The Government Mandate is not the least restrictive means of furthering the Defendants' interests.

93.     The Government Mandate violates the Plaintiffs' rights to speak freely and to refrain from compelled speech secured to them by the Free Speech Clause of the First Amendment to the United States Constitution.

## COUNT IV

### Violation of the Right to Freedom of Association under the First Amendment to the United States Constitution

94.     The Plaintiffs restate all allegations set forth in the preceding paragraphs of this Complaint.

95.     The First Amendment to the United States Constitution safeguards the right of persons to associate by joining together to engage in expressive association.

96.     The Plaintiffs and various of their employees engage in such expressive association in advancing and communicating their shared religious beliefs.

97.     The Government Mandate imposes an unconstitutional burden on the Plaintiffs' right to expressive association by restricting the shared ability of the Plaintiffs and their like-minded employees to express their views on abortion-related activities free of an obligation to endorse contrary views promoted by the Government Mandate.

98.     The Government Mandate's restriction of the right of the Plaintiffs and their like-minded employees to expressive association furthers no compelling governmental interest and is not narrowly tailored to further any such interest.

99.     The Government Mandate is not the least restrictive means of furthering the Defendants' interests.

100.    The Government Mandate violates the Plaintiffs' right of expressive association secured to them by the First Amendment to the United States Constitution.

**PRAYER FOR RELIEF**

**WHEREFORE**, Joseph B. Holland, Jr. and Joe Holland Chevrolet, Inc. pray for the following relief:

A.     That this Court enter a judgment pursuant to 28 U.S.C. §2201, 2202 declaring the Government Mandate and its application to the Plaintiffs to be an violation of their rights protected by RFRA and the Free Exercise, Free Speech, and Free Association Clauses of the First Amendment to the United States Constitution;

B.     That this Court enter a temporary restraining order and a preliminary injunction prohibiting the Defendants during the course of this litigation from continuing to apply the Government Mandate in a way that substantially burdens the religious belief of the Plaintiffs in violation of RFRA and the Constitution, and prohibiting the Defendants from continuing to discriminate illegally against the Plaintiffs by requiring them to provide health insurance that includes the Objectionable Coverage;

C.      That this Court enter a permanent injunction prohibiting the Defendants from continuing to apply the Government Mandate in a way that substantially burdens the religious beliefs of the Plaintiffs in violation of RFRA and the Constitution, and prohibiting the Defendants from continuing to discriminate illegally against the Plaintiffs by requiring them to provide health insurance providing the Objectionable Coverage;

D.      That this Court award the Plaintiffs costs and reasonable attorneys' fees, as provided by the Equal Access to Justice Act and RFRA (as provided in 42 U.S.C. §1988); and

E.      That this Court grant all such other and further relief as maybe proper and just.

Respectfully submitted this 24th day of June, 2013.

**JOSEPH B. HOLLAND, JR.**
**JOE HOLLAND CHEVROLET, INC.**

By Counsel

*/s/ Allen R. Prunty*
Kent J. George (WV Bar #4842)
William C. Porth (WV Bar #2943)
Allen R. Prunty (WV Bar #2989)
Brian E. Calabrese (WV Bar #12028)
ROBINSON & MCELWEE, PLLC
700 Virginia Street, East
Suite 400
Charleston, West Virginia 25301
(304) 344-5800 Telephone

Jeffrey C. Mateer
Texas State Bar No. 13185320
Hiram S. Sasser, III
Texas State Bar No. 24039157
LIBERTY INSTITUTE
2001 W. Plano Parkway, Suite 1600
Plano, Texas 75075
(972) 941–4444 – Telephone

Jeremiah G. Dys (WV Bar #9998)
The Family Policy Council of WV
P.O. Box 566
Charleston, WV 25322
(304)-881-5196

17

## VERIFICATION

STATE OF WEST VIRGINIA    )
                                     )      to-wit:

COUNTY OF KANAWHA        )

      Before me, a Notary Public in and for the aforesaid jurisdiction, personally appeared Joseph Holland, Jr., who, being by me first duly sworn, did depose and say that he has read the foregoing Complaint and knows the contents thereof, and that the facts therein stated are true to the best of his information and belief. Subscribed and sworn to before me this $2/$ day of June, 2013.

Joseph B. Holland Jr.

Susan K Brooks
Notary Public

OFFICIAL SEAL
Notary Public, State of West Virginia
SUSAN K BROOKS
201 KINGSWOOD ESTATES
CULLODEN, WV 25510
My commission expires May 20, 2022

(SEAL)

{R0812631.1}