IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**JOSEPH B. HOLLAND, JR.**; and
**JOE HOLLAND CHEVROLET, INC.**,
a West Virginia Corporation,

                Plaintiffs,

v.

                                                                        Civil Action No. 2:13-cv-15487

**THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**; **KATHLEEN SEBELIUS**, in her official capacity as Secretary of the United States Department of Health and Human Services; **THE UNITED STATES DEPARTMENT OF LABOR**; **SETH D. HARRIS**, in his official capacity as Acting Secretary of the United States Department of Labor; **THE UNITED STATES DEPARTMENT OF THE TREASURY**; and **JACOB LEW**, in his official capacity as Secretary of the United States Department of the Treasury,

                Defendants.

## AMENDED COMPLAINT

    **COME NOW** the Plaintiffs, Joseph B. Holland, Jr. ("Mr. Holland") and Joe Holland Chevrolet, Inc. ("Holland Chevrolet"), by and through their undersigned counsel, and state the following as their Amended Complaint against the Defendants:

## I. NATURE OF THE CASE

1. Plaintiffs challenge the constitutionality and lawfulness of certain provisions of the Patient Protection and Affordable Care Act of 2010 (Pub. L. 111-148, 124 Stat. 119 (2010) (codified as amended in scattered sections of the U.S. Code), the Health Care and Education Reconciliation Act (Pub. L. 111-152, 124 Stat. 1029 (2010) (codified as amended in scattered sections of the U.S. Code), and certain provisions of the regulations promulgated under said Acts and found in Title 45 of the Code of Federal Regulations (collectively the "ACA"). The challenged statutes and regulations require Holland Chevrolet to provide group health insurance coverage to its employees for drugs that induce abortion ("abortifacient drugs"[1]) and contraceptive counseling, education, and other information concerning the availability of abortifacient drugs (hereafter "abortion-related counseling"). Collectively, the challenged statutes and regulations are referred to herein as the "Abortifacient Requirement." The Plaintiffs do not oppose all types of contraception.

2. Plaintiffs believe that the Abortifacient Requirement imposes an unjustifiable, substantial burden upon their exercise of religion in direct violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C §§ 2000bb *et seq.*, and constitutes a substantial and

---

[1] There is disagreement regarding the use of the term "abortifacient" as it pertains to the ACA. The U.S. Food and Drug Administration ("FDA") define abortifacients as drugs or devices that cause or may cause the death of a human embryo or fetus **after** implantation in the uterus. *U.S. Food and Drug Administration: Approved Methods of Birth Control,* www.consciencelaws.org (last visited July 16, 2013). The FDA defines "embryocides" as drugs or devices that cause or may cause the death of a human embryo **before** implantation in the uterus. *Id.* The Plaintiffs' religious belief is that human life begins at conception, before the embryo is implanted in the uterus. Therefore, Plaintiffs believe that causing the death of a human embryo before it is implanted in the embryo constitutes abortion. To be true to Plaintiffs' religious beliefs, and to be consistent with the terminology used in other court decisions addressing challenges to the Abortifacient Requirement, Plaintiffs will refer to drugs that cause the death of a human embryo at any time after conception, including before the embryo is implanted in the uterus, as abortifacients. The Plaintiffs do not oppose all forms of contraception, such as contraceptive drugs and devises that prevent fertilization. The Plaintiffs oppose only drugs that kill human embryos (abortifacients).

straightforward

indefensible violation of their First Amendment rights to freedom of religion, free speech, and freedom of association.

3. Plaintiffs seek declaratory and injunctive relief from the Defendants' enforcement of the Abortifacient Requirement. Plaintiffs do not have an adequate remedy at law.

## II. JURISDICTION AND VENUE

4. This action arises under the Constitution and laws of the United States. The United States District Court for the Southern District of West Virginia has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5. Venue is in the United States District Court for the Southern District of West Virginia pursuant to 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occur.

## III. IDENTIFICATION OF PARTIES

6. Mr. Holland is a United States citizen and a resident of Kanawha County, West Virginia.

7. Mr. Holland is president of Holland Chevrolet and chairman of its board of directors. He is actively involved in the day-to-day management of Holland Chevrolet and owns 91% of the company's stock. The remaining 9% of the stock is held in trust by the Joseph B. Holland, Sr., Trust, of which Mr. Holland is the Trustee.

8. Holland Chevrolet is a closely held West Virginia corporation established by Mr. Holland's now deceased father in 1964.

9. Holland Chevrolet is engaged in the business of selling and servicing motor vehicles, with its principal place of business in South Charleston, West Virginia.

10. The Defendants are Executive Branch agencies of the United States government and appointed officials of those agencies responsible for implementing and enforcing the Contraceptive Coverage Mandate.

11. Kathleen Sebelius is the Secretary of the United States Department of Health and Human Services ("HHS") and is sued in her official capacity only.

12. Seth D. Harris is the Acting Secretary of the United States Department of Labor ("DOL") and is sued in his official capacity only.

13. Jacob Lew is the Secretary of the United States Department of the Treasury ("the Treasury") and is sued in his official capacity only.

14. HHS, DOL, and the Treasury each have responsibilities for promulgating regulations implementing the ACA and for administering and enforcing its provisions, including the Contraceptive Coverage Mandate.

## IV. STATEMENT OF FACTS

A. Plaintiffs' religious beliefs and practices.

15. Mr. Holland experienced a religious conversion in 1996 when he became a believing and practicing born-again Christian.

16. As a devoted born-again Christian, Mr. Holland is resolved to conduct all aspects of his life, including his management of Holland Chevrolet, in accordance with God's Word.

17. In observation of his sincere religious beliefs, Mr. Holland attends multiple weekly worship services at the Maranatha Fellowship Church; participates in a weekly men's group Bible study; frequently conducts the informal prayer meeting held every Monday morning at Holland Chevrolet; supports youth ministries such as the Silver Ring Ministry, which promotes pre-marital sexual abstinence; participates in the Life Chain, a pro-life religious ministry; delivers religious readings on Christian radio; is Chairman of the fund-raising

4

committee for the local chapter of the Fellowship of Christian Athletes; and supports other religious organizations such as the Campus Crusade for Christ and Promise Keepers.

18. One of Mr. Holland's sincerely held religious beliefs is that all human life is sacred to its Creator and that it is profoundly immoral to procure, facilitate, fund, or endorse abortions.

19. Mr. Holland regards it as his religious duty to operate Holland Chevrolet in conformity with his religious beliefs. In Mr. Holland's view, his right to the free exercise of religion should not be limited by the form in which he elects to do business.

20. Holland Chevrolet, as a cognizable legal person, conducts itself in accordance with the same religious principles that animate its president, chairman of the board, and principal stockholder.

21. In observation of the Fourth Commandment to "Remember the Sabbath day and keep it holy," Holland Chevrolet is closed on Sundays.

22. One of Holland Chevrolet's employees serves as a company chaplain who is available to employees for counseling, prayer, and support during difficult and challenging times.

23. Holland Chevrolet's website emphasizes as part of the corporation's mission statement the duty "to glorify and honor God by being faithful stewards for all that is entrusted to us." http://joeholland.com/mission.shtml (last visited July 22, 2013).

24. Holland Chevrolet's signage and other business imagery feature in their design the *ichthus* (the ancient symbol of the Christian faith).

25. All employees of Holland Chevrolet are free to attend the weekly Monday morning prayer meeting during regular work hours.

26. The Plaintiffs believe that Holland Chevrolet should serve as a form of religious

ministry to its employees, customers, and community by conducting its business in accordance with God's word.

27. The Plaintiffs believe that this ministry is undermined by their compliance with the Abortifacient Requirement, and that compliance with the Abortifacient Requirement violates God's Word and contravenes the message of their ministry.

28. The Plaintiffs believe that the Bible is the inspired, infallible, and authoritative Word of God.

29. The Plaintiffs believe that the Bible reveals the principles by which God expects human beings to conduct themselves in all aspects of their lives, including their jobs and business dealings.

30. The Plaintiffs believe that God commands respect for the sanctity of all human life, including the unborn.

31. The Plaintiffs believe that according to God's Word, human life begins at conception, and that all human life must be treated with dignity, respect, and protection from the moment of conception onward.

32. The Plaintiffs believe, based on the teachings of the Bible generally and the Sixth Commandment in particular ("Thou Shalt Not Kill"), that God abhors and condemns the intentional destruction of human life.

33. The Plaintiffs believe that it violates the Sixth Commandment for them to procure, facilitate, endorse, fund, or engage abortions.

34. The Plaintiffs' sincerely held religious beliefs condemn their providing coverage for the abortifacient drugs and abortion-related counseling required by the Abortifacient Requirement.

**B. The ACA, Abortifacient Requirement, and Holland Chevrolet.**

35. The ACA was adopted in March 2010.

36. Under the ACA, employers with more than 50 full-time employees are required to provide a certain minimum level of health insurance coverage to their employees. 26 U.S.C. § 4980H.

37. Holland Chevrolet has approximately 150 full-time employees.

38. The ACA specifically requires non-grandfathered and non-exempt group health insurance plans to cover certain preventive health services at no cost to the insured. 42 U.S.C. § 300gg-13(a)(4).

39. Regulations promulgated by HHS pursuant to the ACA specify that the required preventive health coverage must include all FDA-approved contraceptive methods. 77 Fed. Reg. 8725 (Feb. 15, 2012); *see also* 45 C.F.R. § 147.130.

40. The contraceptive methods approved by the FDA include abortifacients such as the "Plan B" and "Next Choice" drugs (commonly referred to as the "morning after pill") and "*ella*" (commonly referred to as the "week after pill"), which is similar to the abortion drug RU-486. *Id.*; Office of Women's Health, FDA, Birth Control Guide, http://www.fda.gov/downloads/forconsumers/byaudience/forwomen/freepublications/ucm336451.pdf (last visited July 23, 2013); HRSA Guidelines, http://www.hrsa.gov/womensguidelines (last visited July 23, 2013).

41. The Abortifacient Requirement also requires group health care plans to pay for the provision of counseling, education, and the dissemination of information concerning contraception (including information regarding abortifacient drugs) to all female beneficiaries who are capable of bearing children. *Id.*

42. HHS has adopted regulations providing an exemption from the Abortifacient Requirement employers with 50 or fewer full-time employees, non-profit religious employers, and certain other "grandfathered" plans. *See* 45 C.F.R. § 147.131; 78 Fed. Reg. 39873 -74 (July 3, 2013); 45 C.F.R. § 147.190. These exemptions exclude millions of employees from the Abortifacient Requirement.

43. The Abortifacient Requirement applies to group health insurance plans beginning with the first plan year after August 1, 2012. 77 Fed. Reg. 8725-26.

44. Violations of the Abortifacient Requirement subject employers to financial penalties including a $100 per day, per employee tax. 42 U.S.C. § 300gg-22; *see also* 26 U.S.C. § 4980H (imposing assessable payments on employers who fail to provide the health care coverage as required by the ACA and employers who fail to provide "affordable" health care coverage as required by the ACA).

45. Violation of the ACA may also trigger a range of enforcement mechanisms that exist under ERISA, including civil actions by the Secretary of Labor or by plan participants and beneficiaries, which could entail additional penalties. 29 U.S.C §§ 1003(a), 1132.

46. Consistent with their religious beliefs, Plaintiffs have provided and wish to continue providing a generous group health care plan ("the "Plan") to the employees of Holland Chevrolet.

47. The Abortifacient Requirement applies to the Plan beginning July 1, 2013, because Holland Chevrolet (i) has more than 50 full-time employees, (ii) does not qualify as a religious employer, and (iii) is not entitled to the grandfather exemption because the Plan's current $5,000 deductible represents a $2,000 increase of the deductible in effect on March 23, 2010.

48. There has been considerable confusion regarding whether Holland Chevrolet's

8

group health care plan ("the Plan") provides coverage for the abortifacient drugs and abortion-related counseling included in the Abortifacient Requirement. Plaintiffs initiated this litigation and moved the Court for a temporary restraining order and preliminary injunction with the understanding that the Plan does not cover the objectionable drugs and counseling. Thereafter, the Plaintiffs' insurer reported that the current Plan does in fact cover abortifacient drugs, and that the Plan covered these drugs prior to July 1, 2013, whereupon the Plaintiffs filed a motion disclosing this new information to the Court and withdrawing their motion for a temporary restraining order and preliminary injunction.[2]

49. The Abortifacient Requirement unlawfully and unconstitutionally coerces the Plaintiffs to violate their sincerely held religious beliefs.

50. The Plaintiffs' compliance with the Abortifacient Requirement causes a substantial burden on the Plaintiffs' exercise of religion and causes irreparable harm to the Plaintiffs by forcing them to abandon or act in derogation of their religious beliefs by providing insurance coverage for abortifacients and abortion-related counseling.

51. Cancelling their employee group health care plan in order to avoid compliance with the Abortifacient Requirement, and thereby avoid violating their religious beliefs, may expose the Plaintiffs to statutory penalties under the ACA. *See* 26 U.S.C. § 4980H.

---

[2] It is easy to be confused regarding the various abortifacients since some are available over-the-counter and others require a prescription. For example, there are two types of "Plan-B" drugs: the original Plan-B (two-dose regimen) and the new Plan-B One Step (one-dose regimen). The brand name Plan-B drugs are manufactured by Teva Pharmaceuticals. There are also generic versions of both Plan-B drugs. Special FDA rules define the availability of the brand name Plan-B drugs manufactured by Teva. Until recently, women under age 17 needed a prescription for Plan-B drugs, brand name & generic. In April 2013, the FDA approved the brand name Plan-B One Step for nonprescription use by girls as young as 15. On June 20, 2013, the FDA announced that it would no longer prohibit the sale of the brand name Plan-B One Step over-the-counter to women of any age.
Currently, women of <u>any</u> age can buy the brand name Plan-B One Step over-the-counter. On the other hand, women under age 17 <u>cannot</u> purchase the generic one-dose drug (*i.e.,* Next Choice One Dose) with or without a prescription, & women under age 17 must have a prescription to purchase the generic two-dose version of Plan-B. *See* http://www.npr.org/blogs/health/2013/07/24/205182187/plan-b-to-hit-shelves-protected-from-generics (last visited July 23, 2013). In addition to the Plan B drugs, there is the abortifacient drug with the brand name ella. Ella requires a prescription. Plaintiffs oppose all abortifacient drugs including, but not limited to, the brand name Plan B drugs, the generic Next Choice One Step, and ella. Plaintiffs do not oppose contraceptive drugs and methods that do not kill human embryos before or after implantation in the uterus.

52. Any alleged interest the Defendants have in providing access to the abortifacients and abortion-related counseling required by the Abortifacient Requirement is not a compelling interest of the highest order.

53. The Defendants' interest in providing the abortifacients and abortion-related counseling required by the Abortifacient Requirement can be advanced through other measures that are more narrowly tailored and do not substantially burden the Plaintiffs' exercise of religion.

54. Without declaratory and injunctive relief as requested herein, the Plaintiffs will suffer irreparable harm as a result of their coerced compliance with the Abortifacient Requirement in violation of their sincere and held religious beliefs. The Plaintiffs have no adequate remedy at law.

## COUNT I

### Violation of the Religious Freedom Restoration Act
### 42 U.S.C. § 2000bb

55. The Plaintiffs restate all allegations set forth in the preceding paragraphs of this Amended Complaint.

56. The Plaintiffs engage in the exercise of religion within the meaning of RFRA.

57. The Plaintiffs believe that the Abortifacient Requirement requiring them to provide insurance coverage for abortifacients and abortion-related counseling is sinful and contrary to their sincerely held religious beliefs.

58. The Abortifacient Requirement imposes a substantial burden on the Plaintiffs' exercise of religion because it forces the Plaintiffs to provide coverage under their employee health insurance plan for abortifacients and abortion-related counseling in violation of their religious beliefs.

59. The Abortifacient Requirement chills and deters the Plaintiffs' religious exercise within the meaning of RFRA.

60. The Abortifacient Requirement furthers no compelling governmental interest by forcing the Plaintiffs' compliance with the mandate.

61. The Abortifacient Requirement is not the least restrictive, narrowly tailored means by which the Defendants may satisfy any interest they may have in providing abortifacients and abortion-related counseling as defined by the Abortifacient Requirement.

62. The Defendants' exemption of many employers and millions of employees from the Abortifacient Requirement contravenes any claim by the Defendants that the Abortifacient Requirement to further a compelling interest of the highest order.

63. The Defendants' exemption of certain groups from the Abortifacient Requirement together with their failure to accommodate the Plaintiffs' religious beliefs, is highly selective, arbitrary, and discriminatory.

64. The Abortifacient Requirement violates RFRA.

## COUNT II
### Violation of the Free Exercise Clause of the First Amendment to the United States Constitution

65. The Plaintiffs restate all allegations set forth in the preceding paragraphs of this Amended Complaint.

66. The Plaintiffs' sincerely held religious beliefs prohibit them from providing the insurance coverage required by the Abortifacient Requirement.

67. The Plaintiffs engage in the exercise of religion within the meaning of the Free Exercise Clause of the First Amendment.

68. The Abortifacient Requirement imposes substantial burdens on the Plaintiffs' exercise of religion and coerces them to abandon or act in derogation of their sincerely held religious beliefs.

69. The Abortifacient Requirement chills and deters the Plaintiffs' religious exercise within the meaning of the Free Exercise Clause.

70. The Abortifacient Requirement violates Plaintiffs' rights secured to them by the Free Exercise Clause of the First Amendment to the United States Constitution.

## COUNT III
### Violation of the Free Speech Clause of the First Amendment to the United States Constitution

71. The Plaintiffs restate all allegations set forth in the preceding paragraphs of this Amended Complaint.

72. The Plaintiffs wish to exercise their free speech rights to express a consistent religious-based pro-life message to their employees, their customers, their business associates and contacts, and the community in which they do business.

73. The Abortifacient Requirement unconstitutionally burdens the Plaintiffs' rights to speak or not to speak in accordance with their religious beliefs and to advance the truth as they see it.

74. The Abortifacient Requirement forces the Plaintiffs to endorse speech that contravenes their sincere and deeply held religious beliefs and the religious values that they strive to promote in their business.

75. The Abortifacient Requirement forces the Plaintiffs to support the Defendant's definition of abortion as occurring only after implantation of the embryo in the uterus and the Defendants' viewpoint about the morality of abortion-related activities.

76. The Abortifacient Requirement imposes a requirement on the Plaintiffs to support conduct that substantially burdens and undermines the Plaintiffs' ability effectively to express and advocate their own contrary views.

77. The Defendants are requiring the Plaintiffs to convey one message when they comply with the Abortifacient Requirement, while the Plaintiffs are conveying another message when they speak out against abortion, which is to the detriment of the credibility Plaintiffs' free speech. Such fractured messaging makes the Plaintiffs appear inconsistent, equivocal, or hypocritical and impairs the Plaintiffs' message.

78. The speech compelled by the Abortifacient Requirement furthers no compelling governmental interest by forcing the Plaintiffs compliance.

79. The Abortifacient Requirement is not the least restrictive, narrowly tailored means by which the Defendants may satisfy any interest they have in providing abortifacients and abortion-related counseling as defined by the Abortifacient Requirement.

80. The Abortifacient Requirement violates the Plaintiffs' rights to speak freely and to refrain from compelled speech secured to them by the Free Speech Clause of the First Amendment to the United States Constitution.

## COUNT IV
### Violation of the Right to Freedom of Association under the First Amendment to the United States Constitution

81. The Plaintiffs restate all allegations set forth in the preceding paragraphs of this Amended Complaint.

82. Individuals have a right to associate and promote a particular belief. This right is known as the right of expressive association and is protected by the First Amendment to the United States Constitution.

83. The Abortifacient Requirement imposes an unconstitutional burden on the Plaintiffs' right of expressive association by compelling the Plaintiffs to support, subsidize, or fund activities that are contrary to the Plaintiffs sincere religious beliefs.

84. The burden imposed by the Abortifacient Requirement on the Plaintiffs' right of expressive association furthers no compelling governmental interest and is not the least restrictive, narrowly tailored means by which the Defendants may satisfy any interest they have in providing abortifacients and abortion-related counseling as defined by the Abortifacient Requirement.

85. The Abortifacient Requirement violates the Plaintiffs' right of expressive association secured to them by the First Amendment to the United States Constitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Joseph B. Holland, Jr. and Joe Holland Chevrolet, Inc., pray for the following relief:

A. That this Court enter a judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 2000bb-1 declaring the Abortifacient Requirement and its application to the Plaintiffs to be a violation of their rights as protected by RFRA and the Free Exercise, Free Speech, and Free Association Clauses of the First Amendment to the United States Constitution;

C. That this Court enter a permanent injunction prohibiting the Defendants from applying and enforcing the Abortifacient Requirement so as to substantially burden the Plaintiffs' religious beliefs and free exercise of religion in violation of RFRA and the United States Constitution, and prohibiting the Defendants from continuing to discriminate illegally against the Plaintiffs by requiring them to comply with the Abortifacient Requirement;

  D. That this Court award the Plaintiffs costs and reasonable attorneys' fees, as provided by the Equal Access to Justice Act and RFRA (as provided in 42 U.S.C. § 1988); and

  E. That this Court grant all such other and further relief as maybe proper and just.

**JOSEPH B. HOLLAND, JR.**
**JOE HOLLAND CHEVROLET, INC.**

By Counsel

*/s/ Allen R. Prunty*
Kent J. George (WV Bar #4842)
William C. Porth (WV Bar #2943)
Allen R. Prunty (WV Bar #2989)
Brian E. Calabrese (WV Bar #12028)
ROBINSON & MCELWEE, PLLC
700 Virginia Street, East – Suite 400
Charleston, West Virginia 25301

and

Jeffrey C. Mateer
Texas State Bar No. 13185320
Hiram S. Sasser, III
Texas State Bar No. 24039157
LIBERTY INSTITUTE
2001 W. Plano Parkway, Suite 1600
Plano, Texas 75075

Jeremiah G. Dys (WV Bar #9998)
The Family Policy Council of WV
P.O. Box 566
Charleston, WV 25322

## **CERTIFICATE OF SERVICE**

I, Allen R. Prunty, counsel for Plaintiffs Joseph B. Holland, Jr., and Joe Holland Chevrolet, Inc., hereby certify that on the 26th day of July, 2013, I filed the foregoing Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Michelle Renee Bennett and Stephen M. Horn, counsel for Defendants, and Sarah Austin Rogers, counsel for Amicus Curiae ACLU of West Virginia Foundation; and, further, I certify that I served a true and correct copy of the foregoing Motion upon the following counsel of record by United States Mail, first class postage prepaid, on the 26th day of July, 2013:

Daniel Mach
ACLU Foundation
915 15th Street – 6th Floor
Washington, DC 20005
Counsel for American Civil Liberties Union Foundation

Jennifer Lee
ACLU Foundation
125 Broad Street – 18th Floor
New York, NY 10004
Counsel for American Civil Liberties Union Foundation

/s/ Allen R. Prunty
Allen R. Prunty (WV Bar # 2989)